Tayxok, Chief-Justice,
 

 delivered the opinion of the Court:
 

 The act of 1814, ch. 5, is the only law which gives authority to the Courts to take cognizance of the subject of divorce. The first section of that act authorises the Court to decree a divorce
 
 from bed and board,
 
 or from the
 
 bonds of matrimony,
 
 at the discretion of the Court, on proof of natural impotence, or that either party has separated ’•' or herself from the other, and is living in Adultery.
 
 ,
 
 a subsequent section authorises the Court to deert divorce from bed and board, in cases where the hush either abandons his family, maliciously turns his wife, of doors, endangers her life by cruel treatment, or ofl .s intolerable indignities to her person. The verdict of the Jury has negatived the charges in the petition, relative to the cruelty and personal ill-treatment, and affirmed the charge of
 
 adultery;
 
 as to which, the Jury find that the Defendant did separate himself from the petitioner, and
 
 *329
 
 live ill a state of adultery, in tlie year Í812 or 1813, for the space of six months. And this brings forward the question, whether a decree can be pronounced under the act of 1814, for the adultery committed before that period.
 

 From the languag’e used in the first and second sections of the act, it would seem to have been the intention of the Legislature to authorise divorces for causes existing when the act was passed : for the first section speaks of
 
 “
 
 a marriage heretofore contracted,” and then proceeds to specify a cause of divorce coeval with the marriage, to-wit, impotency; and the second section, not less distinctly, speaks of the injury which
 
 has hem
 
 received from either of the causes stated in the first. In the fifth section, the language is changed, and in enumerating the causes of divorce
 
 from bed
 
 and board, the law is strictly prospective, and assumes the recognised form of a Legislative act. “
 
 futuris fonnam débet imponere, non PrcetcHlis
 
 — 6 Bac. S70.
 

 Before the enactment of this law, the offence charged in the petition was punishable only under the act of 1805, which imposed a fine on the party convicted : and therefore the Defendant was liable to no other punishment in 1812 or 1813, when he committed the offence; and to that extent he yet continues liable. . But the Court is now called upon to superadd to.,this liability, a deprivation of the marital rights, and an allowance to the petitioner out of her husband’s estate, under the authority of the act of 1814. But as that law increased' the punishment of the offence, though it did not create its criminality, it appears to be, in relation to this case, unauthorised by the Declaration of Rights; if not by the very words, at least by their fair meaning and spirit.
 
 “
 
 Retrospective laws, punishing faots
 
 “
 
 committed before the existence of such laws, and by “ them only declared criminal, are oppressive, unjust, and
 
 (t
 
 incompatible with liberty : Wherefore,
 
 no ex post facto “
 
 law ought to be made.” — 24th sec. of the Declaration of Rights, It is true that the fact of adultery was declared
 
 *330
 
 criminal by tbe act of 1805
 
 -,
 
 but to aggravate the punishment of a crime, by a law posterior to its commission, is forbidden by the same reason that restrains the Lcgisla-^u[>e £1>om conrcl.¿¡ng. into a crime, an act ihnoce; 'hen committed. Punishments are designed to suppress es, and the degree in which each individual is liable fo > cific violations of the law, is promulgated to the citi under a constitutional assurance, that they are irresponsible beyond the existing enactments when the crime was committed. This construction has been put upon the term
 
 ex post facto
 
 laws, by the Supreme Court of the United States, in the case of Calder
 
 v.
 
 Bull. — 3 Dall. 386. — Mr. Justice Chase says,
 
 “
 
 I will state what laws I consider “
 
 ex post facto
 
 laws, within the words and the intent of « the prohibition. 1st. Every law
 
 that
 
 makes an action,
 
 “
 
 done before tbe passing of the law, and which was inno- “ cent when done, criminal, and punishes such action. “ 2d. Every law that aggravates a crime, or makes it
 
 “
 
 greater than it was when committed. 3d. Every law “ that changes the punishment, and indicts a greater pun- “ ishment, than the law annexed to the crime when com-
 
 “
 
 mitted. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony, than the law required at the time of the commission of the “ offence, in order to convict the offender.” Mr. Justice Patterson says, in the same case,
 
 “
 
 the enhancement of a “ crime or penalty, seems to
 
 come
 
 within the same mis-
 
 e(
 
 chief as the creation of a crime or penalty 5 and there- “ fore, they may be classed together.” Mr. Justice Ire-dell, speaking of the power of the Federal and State Legislatures, says,
 
 “
 
 they shall not pass any
 
 ex
 
 post
 
 facto
 
 “ law; or, in other words, they shall not indict a punish-
 
 “
 
 ment for any act, which was innocent at the time it was
 
 “ committed;
 
 nor increase the degree of punishment pre-4S viously denounced for any offence.”
 

 "Without referring to other authorities for an exposition of these terms, I think it may be taken as an incontrover-
 
 *331
 
 tibie position, that the act of 1814, so fax* as it is relied upon to sustain this application, is substantially at variance with a most impoi'tant constitutional provision, the pro-servation of which inviolate, is vitally connected with every principle and bulwark of civil liberty. For this reason, therefore, the petition must be dismissed.
 

 But as another question is presented by the case, the determination of which at this time, may serve to prevent fruitless litigation, and settle the practice in other cases,, the Court will give an opinion upon it. The sixth section of the act of 1814, enacts that no petition shall be sustained, unless the petitioner shall state and swear, that the facts
 
 forming
 
 the ground of the complaint, have existed to liis or her knowledge, at least six months prior to the filing of the petition. The affidavit in this case, simply affirms the truth of the facts according to the best of the petitioner’s knowledge and belief, and that the petition is not filed out of collusion or levity, but for the causes stated in the petition. Nor does the body of the petition state the fact in the manner required by the act. It should, however, be distinctly stated in the affidavit, that the petitioner knew of the facts charged, six months before the filing of the
 
 petition;
 
 and this, that the application may appear to the Court not dictated by passion or resentment, but an affair of deliberation.