ABRAHAM SUYDAM v. The RECEIVERS OF THE BANK OF NEW-BRUNSWICK.

The act, entitled, "An act to prevent frauds by incorporated companies," passed the sixteenth of February, 1829, applies to incorporated companies whose charters were then in force, and in which there was no reservation to the legislature of a right to alter, modify or repeal the same.

The act regulates, rather than gives jurisdiction to this court.

Enactments of the kind contained in this statute, though retrospective in their operation, are not in a legal sense *ex post facto.* These terms, in legal phraseology, refer to crimes, pains and penalties.

Receivers appointed under the act may, in their discretion, on the ground of expediency, ratify a sale made by the company after insolvency, or a suspension of its business for want of funds, though such sale is declared by the act null and void as against creditors.

THIS cause came before the court upon an appeal from the decision of the receivers of the Bank of New-Brunswick, under the eighteenth section of the act, entitled, "An act to prevent frauds by incorporated companies," passed the sixteenth of February, 1829, (*Elmer's Digest*, 36,)—by which it is enacted as follows : " In case any such company, or person or persons whatever, shall think themselves or himself aggrieved by the proceedings or determination of the said receiver or receivers, or trustees, in the discharge of their duty, it shall be lawful for the party aggrieved to appeal to the chancellor, who shall in a summary way hear and determine the matter complained of, and make such order touching the same as shall be equitable and just; and

the chancellor, in the execution of the powers and authority under this act, is hereby vested with all the jurisdiction and power which is lawful for the court of chancery to exercise in suits depending in that court, and may proceed according to the rules, principles and practice of that court, excepting when otherwise directed by this act: and all cases brought before the chancellor under this act, shall be considered as depending in the court of chancery, and the orders and decisions carried into effect, the same as in other causes of equity jurisdiction."

*Molleson,* for the appellant.

*E. Wood,* for the receivers.

THE CHANCELLOR. On the eighteenth of February, one thousand eight hundred and thirty-four, the Bank of New-Brunswick suspended its ordinary business, and refused to redeem its notes in specie.

On the first of March following, Abraham Suydam entered into a written contract with the president and directors of the institution, for the purchase of certain real estate in the city of New-Brunswick; in which it was agreed, that he should pay them therefor the sum of eight thousand dollars in the notes of the Bank of New-Brunswick—two thousand dollars on or before the first day of May then next, and the residue on or before the first day of March thereafter. On the payment of the sum of two thousand dollars, possession was to be given. The deed for the property was made and executed, and delivered to James S. Nevius, esquire, to be by him delivered to Suydam, on his complying with the terms of the agreement.

On the twenty-eighth of March, an injunction issued against the bank, at the instance of the Mechanics' Bank of the city and county of Philadelphia; and on the second day of April, Edward Wood, George Richmond and David W. Vail, were appointed receivers.

On the first day of May, Suydam tendered to the receivers the

sum of two thousand dollars in the notes of the Bank of New-Brunswick, but the receivers refused to take the notes and confirm the contract. The following entry was made by them on their minutes, viz. :—

"May 1st, 1834. Abraham Suydam, of the city of New-Brunswick, tendered this day to the receivers, in bills of the bank, two thousand dollars, in part performance of a contract made by him with the officers of the bank since the suspension of business, for the purchase of real property belonging to the bank, situate in the said city of New-Brunswick. Understanding from Mr. Suydam, and from the agreement produced by him, of which the receivers have a duplicate copy, that by the terms of the contract, the sum of eight thousand dollars was to be paid for the property, in bills of the bank, by instalments; and believing that the property may be disposed of for about six thousand dollars—that the assets of the bank will not be more than sufficient to pay eventually more than forty cents on the dollar to the creditors; the receivers considered that, in the exercise of that discretionary power with which they conceived themselves invested to ratify or refuse to confirm such contract, they were bound to consult only the interests of the creditors and stockholders, and deeming the ratification of this contract prejudicial to those interests and derogating from the rights of the creditors, they refused to confirm it, and declined receiving said bills."

From this decision of the receivers, there has been an appeal taken, under the eighteenth section of the act, entitled, "An act to prevent frauds by incorporated companies," passed the sixteenth of February, 1829.

The facts stated in the petition of appeal, are not denied by the receivers, and the case has been submitted without argument.

Before considering the appeal on its merits, it is right to notice an objection, which, if well taken, will preclude the necessity of any further examination.

The petitioner submits, that the act under which these proceedings have been had, does not apply to the cases of incorpo-

rated companies whose charters were at the period of the enact-ment in full force, and in which there was not the usual reserva-tion to the legislature, of a right to alter, modify or repeal the same; and because the charter of the New-Brunswick Bank, being granted prior to the act of 1829, the act, if intended to apply to it, is to that extent *ex post facto*, and therefore uncon-stitutional.

I think this objection unsound. The legislature had a perfect right to pass the act in question, and to include within its pro-visions all banking incorporations then in existence, as well as those which might thereafter be created. It is an act to prevent frauds by incorporated companies, and it would be strange if such an act should take away any vested rights of this or any other corporation. It relates to matters of fraud and breaches of trust; and directs the mode of proceeding when cases of that description occur. It regulates, rather than gives jurisdiction to this court.

Enactments of this kind, even if they may be considered in any wise retrospective in their operation, are not in a legal sense *ex post facto*. These words, when applied to a law, says justice Patterson, " have a technical meaning, and in legal phraseology refer to crimes, pains and penalties." And again he says, " They extend to penal statutes, and no further; they are restricted in legal estimation to the creation, and perhaps enhancement of crimes, pains and penalties :" *Calder et ux*. v. *Bull et ux*. 3 *Dall*. 386. So in the case of *Fletcher* v. *Peck*, 6 *Cranch*, 87, the chief-justice says, "An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed ;" showing very clearly that the act, objected to as unconstitutional, is not an *ex post facto* law.

As it regards the merits, there is but a single question raised. Did the receivers err in refusing to ratify the contract of the first of March?

Under the third section of the act, that contract was clearly unlawful. The company had suspended their usual banking operations, and refused to pay specie. It is not alleged that they proposed shortly to resume business. The appellant knew of

[*Suydam* v. Receivers of the *Bank of New-Brunswick.*]

the suspension; and, although acting on both sides in good faith, he must have known, or ought to have known, that the law peremptorily forbids the sale or transfer of property, after the ordinary business of a bank is suspended for want of funds. There is but one exception made, which is the case of a bona fide purchaser, for a valuable consideration, without notice. Such purchase shall not be impeached; and the rule, " *Expressio unius est exclusio alterius,*" well applies to all others.

In refusing to confirm ₁the contract, on the ground of any right claimed by the petitioner, I think the receivers acted properly. The petitioner had no lawful claim against them.

But the receivers might have ratified it in their discretion, on the ground of expediency; and the principal complaint is, that they refused to make such arrangement. It is alleged by the petitioner, that his purchase was bona fide; that after the suspension of specie payments, the affairs of the bank were examined by the officers, and the result was a perfect conviction of its solvency; that a notice was published by the cashier, requesting holders of bills not to sacrifice them, and informing them that the corporation was able to discharge all its just debts; that the bank continued to receive its notes and bills at par in payment of debts, and to pay in specie or notes of other incorporated banks current at par, all debts due for deposites; that under these circumstances the contract was made; that he was not guilty of any fraud or circumvention in the purchase; and he believes that in the sale the bank acted in good faith, and for the best interests of the said corporation.

Taking all this to be true, as admitted, and taking also the statement of the receivers to be true, that the property is worth six thousand dollars, and that the notes of the bank will not be worth, as it is supposed, more than forty cents in the dollar; I think they did right in declining to ratify the agreement, on the ground of expediency.

The great duty of the receivers is, faithfully to collect and justly to disburse the assets, constituting the trust fund. In doing this, they are properly invested with a discretionary power to

compound and settle; but in the exercise of such power, they must keep primarily and constantly in view, the interests of those for whom they act. According to their estimate, it would have occasioned a loss of two thousand eight hundred dollars; and I cannot conceive how the ratification of the contract, under such circumstances, could have been considered either just or beneficial to those interested in the fund.

It is not intended by this opinion to preclude any compromise or settlement from being made between the parties. The question before the court is as to the correctness of the course taken by the receivers in refusing to affirm the contract, and nothing more. The petitioner, it is true, prays that if the decision of the receivers should not be wholly reversed, the court may make such order and direction as shall be just and equitable ; but the court is of opinion that nothing more is necessary or proper to be done at this time. In this matter, the court sits in an appellate capacity, and has given its judgment on the only point decided by the receivers.

Whether this is a case which, taking all circumstances into consideration, presents proper grounds of equity and good conscience for a compromise, and if so, upon what just and reasonable terms it should be made, is for the receivers to judge of in the first instance. It does not appear that any offers of compromise or adjustment have been made or considered, and, of course, the appellant is not aggrieved by any decision in relation thereto, for none such has been made.

The decision of the receivers is affirmed.