768 So.2d 1236 (2000)
Phillip BLACK, Petitioner,
v.
Michael W. MOORE, Secretary, Florida Department of Corrections, Respondent.
No. 1D99-3667.
District Court of Appeal of Florida, First District.
October 6, 2000.
*1237 Phillip Black, Starke, Petitioner, pro se.
Judy Bone, Assistant General Counsel, Department of Corrections, Tallahassee, for Respondent.
KAHN, J.
The opinion issued August 16, 2000, is hereby withdrawn and this revised opinion shall be substituted therefore. In this certiorari proceeding, we review the trial court's denial of a petition for habeas corpus. Petitioner Phillip Black claims that the Department of Corrections (Department) violated the Ex Post Facto Clause of the United States Constitution when, pursuant to section 944.278, Florida Statutes (1999)[1], it canceled petitioner's retroactive award of administrative gain time and provisional credits totaling 440 days. The Department determined that because petitioner committed the crimes for which he was retroactively awarded the 440 days between June 15, 1983, and June 30, 1985, petitioner did not become entitled to administrative gain time and provisional credits unless and until prison population reached 98% of maximum capacity. The Department further determined that during the period of time for which petitioner received administrative gain time and provisional credits, February 1987 to January 1991, prison population did not reach the 98% maximum capacity threshold. Therefore, the Department concluded, and the circuit court agreed, that no ex post facto violation occurred as a result of cancellation of the retroactively awarded credits and gain time. We deny certiorari.
In Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the United States Supreme Court held that a 1992 Florida statute that retroactively canceled all provisional credits awarded to inmates convicted of murder or attempted murder violated the Ex Post Facto Clause[2] because it acted retrospectively to disadvantage certain inmates by increasing punishment. The Lynce court suggested, however, that some instances will arise where an offender is not entitled to the restoration of credits:
Between 1988 and 1992, the provisional credits were authorized when the prison reached 97.5% capacity rather than 98% capacity as under the emergency gain-time statute. If the prison population did not exceed 98% capacity between 1988 and 1992, and if petitioner received provisional credits during those years, there is force to the argument that the cancellation of that portion of the 1,860-day total did not violate the Ex Post Facto Clause.
Id. at 449, 117 S.Ct. 891.
In order to determine whether an inmate is entitled to restoration of canceled *1238 gain time or provisional credits, the Department must use the threshold percentage of prison capacity as it existed at the time the inmate committed the crime. See Meola v. Department of Corrections, 732 So.2d 1029, 1033 (Fla.1998). When Black committed his crimes in 1983 and 1984, Florida had only an overcrowding emergency gain time statute.[3]See § 944.598, Fla. Stat. (1983). The applicable overcrowding statute provided for credit when prison population exceeded 98% of lawful capacity. The statute defined "lawful capacity" as "the total capacity of all institutions and facilities in the prison system as determined either by the Legislature or by the courts." § 944.598(7)(b), Fla. Stat. (1983). The supreme court has recognized that as of 1983, neither the legislature nor any court had determined an exact definition for "total capacity." See Gomez v. Singletary, 733 So.2d 499, 507 (Fla.1998).
Effective July 1, 1985, however, the definition of "lawful capacity" was set at 133% of total design capacity pursuant to the Costello[4] settlement agreement approved by the United States District Court for the Middle District of Florida. See Gomez, 733 So.2d at 507. Effective June 10, 1995, the definition was changed to 150% of total design capacity. See id. While recognizing that the definition of "lawful capacity" between June 16, 1983, and June 30, 1985, is different from the two definitions above, the Gomez court declined to interpret that definition as the claims before the court did not implicate the earlier dates. See id. at 507-08.
Now the Department points out that from the Costello settlement in 1980 until July 1, 1985, the Department was permitted by the settlement, as adopted by the court, to operate at maximum capacity of the prison system. Thus, the Department posits that "lawful capacity" before July 1, 1985, means the maximum capacity of all institutions in the prison system.
Both the Second and Third District Courts of Appeal have reviewed ex post facto claims of inmates who committed crimes between June 16, 1983, and June 30, 1985. See Sanford v. State, 739 So.2d 1208 (Fla. 3d DCA 1999); Grant v. Singletary, 730 So.2d 805 (Fla. 2d DCA 1999). In those cases, however, the Department did not present the relevant data to allow a determination of whether prison capacity exceeded 98% of lawful capacity. See Sanford, 739 So.2d at 1209; Grant, 730 So.2d at 806. Accordingly, the appeals courts remanded the cases back to the trial courts to make factual findings. See Sanford, 739 So.2d at 1209; Grant, 730 So.2d at 806. Both courts determined that lawful capacity for the relevant time would be viewed as "maximum capacity" pursuant to Costello. See Sanford, 739 So.2d at 1209 n. 1; Grant, 730 So.2d at 805.
Here, in contrast, the Department did provide the trial court with charts documenting the prison population during the relevant time period and tracking whether such population exceeded the threshold of 98% of maximum capacity. The court below relied on the charts to find that prison population did not exceed the 98% threshold of lawful capacity during the time period for which the Department awarded Petitioner administrative gain time and provisional credits. We see no reason not to adopt the Department's position that between 1980 and July 1, 1985, "lawful capacity" meant the maximum capacity of the prison system as detailed in its charts. See Leggett v. Moore, 765 So.2d 258 (Fla. 1st DCA 2000). Accordingly, we hold that petitioner's right to overcrowding credits available in 1983 was never triggered. *1239 Because petitioner could only have contemplated receiving overcrowding credits if prison capacity had exceeded the threshold of 98%, he has no entitlement to the restoration of those credits under the Ex Post Facto Clause. See Meola, 732 So.2d at 1033.
Petitioner's argument that additional crimes he committed in 1988 while in prison qualify him for consideration under the 133% of total design capacity definition of lawful capacity is without merit. Petitioner had not yet begun to serve his sentences for those crimes during the time period for which the Department retroactively awarded administrative gain time and provisional credits. Accordingly, we find that the Department's cancellation of petitioner's gain time and credits did not violate the Ex Post Facto Clause.
The petition for writ of certiorari is DENIED.
BARFIELD, C.J., and DAVIS, J., CONCUR.
NOTES
[1] Section 944.278 provides in part that "[a]ll awards of administrative gain-time under s. 944.276 [repealed 1988] and provisional credits under s. 944.277 [repealed 1993] are hereby canceled for all inmates serving a sentence or combined sentences in the custody of the department.... Release dates of all inmates with 1 or more days of such awards shall be extended by the length of time equal to the number of days of administrative gain-time and provisional credits which were canceled." (footnotes omitted).
[2] Article I, section 10, of the United States Constitution provides that "[n]o state shall... pass any ... ex post facto Law." The Lynce court found that case to fall under the category of ex post facto laws that encompasses "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Lynce, 519 U.S. at 441 n. 13, 117 S.Ct. 891 (quoting Calder v. Bull, 3 Dall. 386, 390, 1 L.Ed. 648 (1798)).
[3] For the purposes of ex post facto analysis, the emergency gain time, administrative gain time, and provisional credits statutes are treated interchangeably. See Lynce, 519 U.S. at 449, 117 S.Ct. 891; Meola, 732 So.2d at 1032.
[4] Costello v. Wainwright, 489 F.Supp. 1100, 1102 (M.D.Fla.1980).