MELLOY, Circuit Judge,
concurring and dissenting.
I join in the majority’s opinion, sections I through IV. However, I dissent as to section V because I believe section 692A.2A is an unconstitutional ex post fac-to law.
The U.S. Constitution prohibits states from passing ex post facto laws. U.S. Const, art. I, § 10, cl. 1. “ ‘Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed,’ ” is an ex post facto law. Stogner v. California, 539 U.S. 607, 612, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003) (quoting Calder v. Bull, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)).
As set out by the majority, the fundamental question the Court must decide is whether the residency requirement amounts to punishment. We do so by first asking whether the legislature intended the statute to be punitive. If the answer is in the affirmative, that ends our inquiry, and we find the legislation to be an ex post facto law. However, if the legislature intended the statute to be nonpunitive, “we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State’s intention to deem it civil.” Smith v. Doe, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (internal quotations and citation omitted). I agree with the majority that the purpose of section 692A.2A is to protect the public. This purpose is nonpuni-tive, so we must determine if the statute “is so punitive either in purpose or effect as to negate the State’s intention to deem it civil.” Id.
I also agree with the majority that the factors outlined in Smith should guide our analysis. However, I part ways with the majority as to how some of the individual factors should be examined and as to the final outcome of the multi-factor analysis.
1. Have measures like the residency restriction historically been regarded as punishment?
The majority concedes that banishment has historically been regarded as punish *724 ment, but points out how the residency restriction differs from banishment. The majority concludes that section 692A.2A is not the type of law that has historically been regarded as punishment. I would find that, although section 692A.2A does not amount to full banishment, it sufficiently resembles banishment to make this factor weigh towards finding the law punitive.
The district court made the following factual findings on the availability of housing:
[S]ex offenders are completely banned from living in a number of Iowa’s small towns and cities. In the state’s major communities, offenders are relegated to living in industrial areas, in some of the cities’ most expensive developments, or on the very outskirts of town where available housing is limited. Although some areas are completely unrestricted, these are either very small towns without any services, or farmland.
* * * * ❖ *
In larger cities such as Des Moines and Iowa City, the maps show that the two thousand foot circles cover virtually the entire city area. The few areas in Des Moines, for instance, which are not restricted, include only industrial areas or some of the city’s newest and most expensive neighborhoods. In smaller towns that have a school or childcare facility, the entire town is often engulfed by the excluded area. In Johnson County alone, the towns of Lone Tree, North Liberty, Oxford, Shueyville, Solon, Swisher and Tiffin are wholly restricted to sex offenders under § 692A.2A. Unincorporated areas and towns too small to have a school or childcare facility remain available, as does the country, but available housing in those areas is not necessarily readily available.
These findings are not clearly erroneous and should therefore be upheld. See Fed. R.Civ.P. 52(a). In its findings, the district court demonstrated how difficult it is for sex offenders to find legal housing in many communities in Iowa due to the housing restriction. It is common that offenders may not return to live in the community they lived in before incarceration, the place' where their families live, and/or the place they find work. There are so few legal housing options that many offenders face the choice of living in rural areas or leaving the state. The difficulty in finding proper housing effectively prevents offenders from living in many Iowa communities. This effectively results in banishment from virtually all of Iowa’s cities and larger towns.
In Smith, the Supreme Court drew a distinction between Alaska’s sex offender registry and colonial punishments such as shaming, branding, and banishment. The Court found that the registry merely involved “dissemination of information,” whereas the colonial punishments “either held the person up before his fellow citizens for face-to-face shaming or expelled him from the community.” Smith, 538 U.S. at 98, 123 S.Ct. 1140 (emphasis added). It described the aim of these colonial punishments as making “offenders suffer permanent stigmas, which in effect cast the person out of the community.” Id. (internal quotation and citation omitted). The residency requirement is a permanent stigma as well as a law that effectively casts the person out of the community. Further, Smith also described as banishment situations in which individuals “could neither return to their original community nor, reputation tarnished, be admitted easily into a new one.” Id. Under this phrasing, section 692A.2A fits the descriptiqn of banishment.
*725 Of course, the residency restriction does not prevent offenders from living in every community, nor from visiting communities in which they are not allowed to live. In this way, the law differs from complete banishment. However, preventing offenders from making a home in many Iowa communities after they have served their sentence does have substantial similarity to banishment. To the extent that offenders are effectively banished from their desired places of residence, I would find this factor weighs in favor of finding section 692A.2A punitive.
2. Does the residency restriction promote traditional aims of punishment?
The residency restriction serves a traditional aim of punishment: deterrence. The majority attempts to minimize the deterrent effect of the statute by arguing that the statute does not increase the negative consequences for an action, but merely reduces the opportunity for that action to occur. In my view, this distinction is not important. One major reason we use the punishments we do, such as imprisonment, is to reduce the likelihood of future crimes by depriving the offender of the opportunity to commit those crimes. There is clearly a deterrent purpose at work in section 692A.2A, thus the measure promotes a traditional aim of punishment.
3. Does the residency restriction impose an affirmative disability or restraint?
The majority acknowledges that the residency requirement imposes an affirmative disability or restraint, and I agree. It restricts offenders from living in certain areas. Offenders that live within the restricted areas face criminal penalties. In this way, the restraint differs greatly from the sex offender registry in Smith. The Court in that case pointed out that offenders were “free to change ... residences.” Smith, 538 U.S. at 100, 123 S.Ct. 1140. The Court also noted that there was no evidence that the measure disadvantaged the offenders in finding housing. Id. I would find that the affirmative disability or restraint intrinsic in the residence requirement distinguishes it from the sex offender registry in Smith and weighs in favor of finding the law punitive.
4. Does the residency restriction have a rational connection to a nonpunitive purpose?
I agree with the majority that section 692A.2A has a rational connection to the nonpunitive purpose of protecting the public. See In Interest of S.M.M., 558 N.W.2d 405, 408 (Iowa 1997).
5. Is the residency restriction excessive?
Though I believe a rational connection exists between the residency restriction and a nonpunitive purpose, I would find that the restriction is excessive in relation to that purpose. The statute limits the housing choices of all offenders identically, regardless of their type of crime, type of victim, or risk of re-offending. The effect of the requirement is quite dramatic: many offenders cannot live with their families and/or cannot live in their home communities because the whole community is a restricted area. This leaves offenders to live in the country or in small, prescribed areas of towns and cities that might offer no appropriate, available housing. In addition, there is no time limit to the restrictions.
Also, the residency restriction applies to plaintiffs who are not the most serious sex offenders. There is no doubt a class of offenders that is at risk to re-offend and for whom such a restriction is reasonable. *726 However, the restriction also applies to John Doe II, who pleaded guilty to third degree sexual abuse for having consensual sex with a fifteen-year-old girl when he was twenty years old. The restriction applies to John Doe VII, who was convicted of statutory rape under Kansas law. His actions which- gave rise to this conviction would not have been criminal in Iowa. The restriction applies also to' John Doe XIV, who pleaded guilty to a serious misdemeanor charge in 1995 after he exposed himself at a party at which a thirteen-year-old girl was present. John Doe XIV was nineteen at the time of his offense. The actions of these and other plaintiffs are serious, and, at. least in most cases, illegal in this state. However, the severity of residency restriction, the fact that it is applied to all offenders identically, and the fact that it will be enforced for the rest of the offenders’ lives, makes the residency restriction excessive.
In my view, four factors weigh in favor of finding the statute punitive, while only one weighs in favor of finding the statute nonpunitive. The analysis leads me to the conclusion that the residency restriction is punitive. Because the imposition of the residency requirement “ ‘changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed,’ ” Stogner, 539 U.S. at 612, 123 S.Ct. 2446 (quoting Colder, 3 U.S. at 390, 3 Dall. 386, 1 L.Ed. 648), I would find Section 692A.2A is an unconstitutional ex post facto law that cannot be applied to persons who committed their offenses before the law was enacted.