JOHN RANDEL, Jun'r. *vs.* RICHARD SHOEMAKER, garnishee of THE CHESAPEAKE AND DELAWARE CANAL COMPANY.

The Same *vs.* THOMAS P. CROWELL, garnishee, &c.

CAPIAS case.   The deft. pleads "nulla bona" and issue.
CAPIAS case.   Same plea of nulla bona and issue.

These cases came up on questions of law reserved by the superior court on the following statement of facts:

John Randel, jr. recovered a verdict of a jury in the said court against the said company on the 25th of January, 1834, and then and there obtained judgment in the said court against the said company for damages and costs of suit, amounting together to the sum of $229,535 79. The pleadings, record and proceedings in the said suit, from the declaration to the judgment inclusive, are referred to and form a part of this case.

A writ of attachment was issued upon said judgment for the collection of the damages and costs aforesaid, on the 6th June, 1834, returnable to November term of the same year. The said writ was served upon the said Richard Shoemaker, in the county aforesaid, at the Delaware Tide-lock, who was summoned by the sheriff of Newcastle county as garnishee of the Chesapeake and Delaware Canal Company, on the 15th of June, 1834. At the same time the said Richard · Shoemaker was arrested by virtue of a capias, being No. 34, to November term of said court, 1834, at which time and place the said deft. having appeared and given bail, and being put to plead at the election of the said plff. under the said act of assembly, pleaded that he had no goods, chattels, rights, credits, or effects of the said The Chesapeake and Delaware Canal Company in his hands, custody or possession at the time of the attachment laid, or at any time after. On this plea the plaintiff hath joined issue, and this is the question now submitted to the court for their decision.

On the 28th of January, 1834, a resolution was passed by the board of directors of the canal company, in the following words: "Resolved, that hereafter no tolls be collected on the line of the canal, on any vessel, cargo, or other article passing through the canal, until the said vessel, cargo or other article, on which the said tolls may be levied or charged, shall have entered the basin, at the western end of the canal, excepting only such vessel, cargo or other article as may not pass through the canal to the said basin." This resolution has never been printed by the said company, nor hath any notice whatever thereof been given to the said John Randel, jr. until this time. It is admitted that the said resolution was adopted for the purpose of preventing the said John Randel, jr., from attaching the tolls of the said company by virtue of the said judgment, or otherwise availing himself of the jurisdiction of the courts of the state of Delaware for the collection of his said judgment.

The deft. at the time of the service of the said writs of attachment and capias upon him, was, hath ever since been, and still continues to be the master of the sloop Robert and James; the said sloop being in his hands and possession during that time as the master of the same, but he not being the owner of the said vessel. Prior to the service of the said attachment, the said vessel being freighted in the city of Philadelphia with a cargo of merchandise, intended to pass through the Chesapeake and Delaware canal, from the Delaware to the Chesapeake; the said deft. paid the tolls for so passing through said canal, to an officer or agent of the said canal company, appointed by the said president and directors to collect and receive tolls, to

wit; at the office of the said company in the city of Philadelphia, to wit; on the 14th of June, 1834.

The said attachment and capias were served on the said deft. at the time of his offering to pass through the said canal (at the Delaware tide-lock in Newcastle county) with the said vessel and cargo, and previous to the vessel passing through the same; the said tide-lock was, when the said canal was opened for navigation on the 17th of October, 1829, established by the president and directors of the said company, as a place for the receipt of tolls in the said canal; and a collector of tolls has always been appointed to reside at that place; and the collector of tolls then at the said tide-lock permitted the said vessel and the said deft. to pass through the said canal, and the said deft. did pass through the said canal with the said vessel and cargo, without the payment of any other toll.    The tolls for passing through the said canal with the said vessel and cargo, at this time, amounted to the sum of twenty-one dollars lawful money of the United States of America.

The printed paper hereunto annexed, marked with the letter A, is a true copy of the regulations to be observed by vessels navigating the Chesapeake and Delaware Canal, adopted by the board of directors of the said company, with the rates of toll for navigating the said canal, the same having been signed by the president and secretary of the said company and published by order of the president and directors thereof, except so far as that had been altered by the resolution of January 28th, above set forth.

It is further agreed, that the said vessel the said sloop Robert and James (the deft. being then and there the master, and having the direction thereof) passed through the Chesapeake and Delaware Canal with a cargo from Port Deposit to Philadelphia, on the 18th of June, 1834, and three several times afterwards, between that day and the return day of the said writ of attachment.    Copies of the pass bills given to the said deft. on those occasions, are hereunto annexed.    The amount of tolls on the several cargoes of the said sloop, demanded for passage through the said canal, by the Chesapeake and Delaware Canal Company, at their lock at the western end of the canal in the state of Maryland, and there paid by the said Richard Shoemaker, master of the said sloop, between the said 18th of June and the return day of said writ, was $74 44, lawful money of the United States of America.

The acts of the Legislatures of Delaware, Maryland and Pennsylvania, relative to the said The Chesapeake and Delaware Canal Company, and the several supplements thereto, are referred to, and made part of this statement of facts.

It is agreed that since the resolution of January 28th, 1834, above set forth, the tolls for the passage of vessels and their cargoes through the Chesapeake and Delaware Canal, from the eastern end of said canal, in the state of Delaware, to the western end thereof in the state of Maryland, were received by the said company at their office in the city of Philadelphia, and were paid by the owners or captains, or by the agents of the said owners or captains, to the officers or agents of the said company at said office.

It is further agreed that independently of the tolls so attached, and

all other tolls of the said company attached by the said John Randel, jr., a sufficient amount of tolls was always left in their hands not attached, to repair and keep in order the said canal, their locks and other works necessary thereto, and to keep the same navigable, also to defray the expenses of the collection of tolls, including the salaries of all their officers.

It is further agreed, that the construction of the said canal was commenced on the 15th of April, 1824, and was completed and opened for navigation on the 17th of October, 1829. It is also further agreed, that previous to the rendition of the judgment above named, obtained by John Randel, jr., against the said canal company, that the tolls were collected in the canal at the respective tollhouses located at Delaware City and Chesapeake City, from the captains and masters of vessels passing through the said canal; but the counsel for the said defts. protest, that said captains and masters were not personally liable to the said company for the said tolls so paid by them.

If upon the foregoing issue joined in this cause upon the plea aforesaid, the court shall be of the opinion that John Randel, jr., the above named plff. is entitled to judgment against the deft. as garnishee of the said The Chesapeake and Delaware Canal Company upon the plea aforesaid the judgment shall be entered for the said plff. according to their opinion; and if the court should be of the opinion that the said John Randel, jr., is not entitled to judgment against the said deft. on the aforesaid statement of facts, then judgment to be entered for the said deft.

The statement of facts in the case of *Crowell* was so nearly the same with the above, that they need not be here repeated.

On the part of the plff. the following points were presented for the consideration of the court:

First: There was not *any such office* as that of a collector of tolls in Philadelphia, and therefore there was no such *officer* as a collector of tolls at that place having any color of right. His appointment was a contempt of all right.

Second: There was no by-law or resolution of the board of directors establishing such an office, and there was no power in the board to make such a by-law. There was a valid, subsisting by-law prohibiting the exercise of any such power by any such pretended officer.

Third: There was no *legal* payment of any toll by the garnishees in Philadelphia. The payments made in Philadelphia were made to a void authority, in fraud of law, and the by-laws of the company, of the jurisdiction of the court which issused the attachment, and of the rights of the plaintiff.

Fourth: The person having direction of a vessel, being employed by others to pass through the canal, is the proper person to respond to the demand of toll, at the first lock passed by the vessel. If he enters the lock and attempts to pass without payment there, he is personally liable by express statute: and his personal liability can never be released by his own wilful barratry in exposing the vessel to forfeiture. In every view of the case whether under the ninth section of the charter, or the act of the 31st of January, 1832, the master is personally liable for tolls.

Fifth: There was a fraudulent collusion between the collector of tolls at the Delaware tide-lock and the defendant, to evade the charter, the attachment law and the process of the court, after the service of that process on the defendant, and notice of the plff.'s rights under it.

Sixth: Every person having the direction of a vessel, who takes her into the canal and passes through it without payment of toll in the canal, is guilty of an attempt to defraud in the tolls at the moment he offers to pass.

Seventh: If by collusion between the directors of the company and a person having direction of a vessel, or the collector at any place in the canal acting collusively under their orders, and such person, any vessel be permitted to pass through the canal without paying toll thereon, it is a fraud on the jurisdiction of the courts of the States of Delaware and Maryland, and a palpable violation of the charter which owes its whole existence to those States, and to no other. Such a fraud this State will not suffer to be practised, for the purpose of defeating an execution creditor suing process out of her courts, her constitution having provided that "justice shall be administered without denial."

Eighth: The courts of every civilized State and country, are the *guardians of their own jurisdiction;* and by the comity of nations it is settled that they are the proper judges of it. They are bound to protect it.

Ninth: A receipt for the tolls given before the service of the attachment, even by the collector at the Delaware tide-lock, *who is a legal officer,* if given *without payment of the tolls,* is fraudulent and void as against the attaching creditor.

Tenth: Such a receipt if given for tolls paid elsewhere than in the canal is equally void, as against such a creditor.

Eleventh: There can be no officer *de facto,* where there is no office for him to fill.

Twelfth: An attachment protects a garnishee at all places from all claims or demands by the original debtor in the judgment, on which the attachment issues, provided those claims or demands arise before the return of the attachment.

Thirteenth: The directors of the company are but agents of the corporation.

Fourteenth: The restriction upon the power of agents or officers of a corporation contained in the act of incorporation, every person dealing with the company is bound to notice; and where by the express provisions of a public statute, it is enacted that the president and directors of a canal company "shall have power to enact *rules and regulations* for the good government of the said canal, its harbors and basins and other appurtenances, and for the general convenience of vessels navigating the same, and to authorize and empower their agents and officers to enforce conformity to all such rules and regulations against any vessels violating the same, or the persons in command or direction thereof; *provided such rules and regulations shall in no wise contravene the constitution or laws of this State"* —in that case if *such* rules and regulations be made and published to the world, for the information and government of persons trading through the canal, all such persons are bound to notice the powers

72

of, and restrictions on the agents of the company contained in them. By the 21st rule or regulation appended to the cases stated, the collector at the Delaware tide-lock was not only "fully authorized by law," but also "required" to enforce obedience to the fifth rule and regulation requiring payment of tolls *at the first lock passed by a vessel,* and on payment, was bound to give the master, or person having the direction of the vessel, a receipt or pass bill for the tolls. The attachment was a payment at the first lock passed by the vessel.

Plaintiff refers to the following authorities and precedents viz: 3 *Del. Laws* 177-8-9, 183-5-6; *Digest* 85, 430, 524; 2 *Dallas* 381; 4 *Dallas* 334-5-6-7; *Angel and Ames* 182 to 198; 4 *Cranch* 241; 2 *Pickering* 462; 5 *Co. Rep.* 63, b. *city of London's Case;* 8 *Co. Rep.* 253; 3 *Leon..* 265; 2 *Kid on Corp.* 165; *Angel and Ames* 200; 8 *Del. Laws* 126; 4 *Com. Digest* 362, *Toll. E.*; 12 *Wheat.* 78-79; 2 *Cranch* 167, 160; *Bunbury* 68; *Cro. Eliz.* 699; *Lutw.* 189; *Cro. Jac.* 552; *Cro. Eliz.* 533, 775, 699; 11 *Serg. and Rawle* 411; 12 *Wheat.* 69-70; 6 *East* 356, *to* 359; *Com. on Con.* 33; 3 *T. R.* 22; 10 *Coke* 102; *Cro. Eliz.* 199; *Yelverton* 197; 2 *Buls.* 213; *Com. on Con.* 36, 44;3 *T. R.* 454, 172; 14 *Mass. Rep.* 58; 17 *Mass. Rep.* 29; 3 *Peters* 220; 1 *Pick.* 254; *Bac. Ab. Wilson's Ed.* 389, 6 *vol.; Plowd.* 57; 2 *Buls.* 187. 2 *Sid.* 41; 3 *Co. Rep.* 7; 2 *Mass. T. R.* 146; 6 *Bac.* 391, 393, 1 *T. R.* 616; *Plowd.* 36, 59; 10 *Mod.* 117; 6 *Bac.* 391; 6 *Peters* 445; 1 *Bac.* 391; 2 *Lord Raymond* 934; *Abbot on Ship'g.* 133, 156, 175, 150, *note* 2; *Abbot on Ship'g.* 2, 195, 149, 283, 247; *Molloy, book* 2, c 2, s. 9, p. 233, 235; *Lex Oleron* 24; *Salk.* 249; 3 *Lev.* 37; *Cowp.* 143; 1 *Strange* 581; 2 *Lord Raymond* 1349; *Chitty, Pl's.* 105, 144; 2 *Inst.* 55, 74; 10 *Rep.* 75; 1 *Bac.* 392; *Salk.* 415; 1 *Roll's Ab.* 552, *sec.* 5; *Serg. on Attach't.* 154; 15 *Serg. & Rawle* 176; *Angel and Ames* 227, 8, 230; 3 *Wilson* 297; 20 *Johns. R.* 229; 5 *Johns.* 101; 17 *ditto* 284; 1 *Salk.* 280; 3 *Keble* 627; *Serg. on Attach't.* 145, 151; 1 *Com. Digest* 585; 1 *Roll's Ab.* 551; 4 *Dallas* 251; *Serg. on Attach't.* 151, 153-4; *Dyer* 83 *a;* 1 *Com. Digest.* 585; 7 *Cowen* 677, 697; *Cowp.* 636; 9 *East* 126; *Constitution U. S. art.* 4 *sec.* 1.

In behalf of the deft. the following points were submitted and insisted upon:

First. That the deft. is not indebted to the canal company on the facts in the case, and had no goods, chattels, rights or credits in his hands or possession belonging to the company, and that therefore judgment must be rendered in his favor.    1 *Lord Raymond* 57. See charter.

Second. That where any debt is owing by a garnishee, or any property, rights or credits, in his hands belonging to the deft. in the judgment upon which the attachment is issued, is so situated that the garnishee cannot retain it against the will of the principal, and also justify his conduct by defence in a suit at law, it is not liable to attachment.    2 *Mass. Rep.* 94; 3 *Mass. Rep.* 121; 4 *Mass.* 238.

Third. That the act of assembly authorizing the attachment of the tolls of The Chesapeake and Delaware Canal Company by a creditor who has obtained judgment against said company, if so construed as to authorize the attachment to be laid in the hands of the masters of vessels passing through the canal, would be a violation of the consti-

tution of the United States by impairing the obligation of a contract, and that the true construction of the said act, only authorizes the attachment to be laid in the hands of the toll-gatherers or agents of said company.   4 *Wheat.* 518.

Fourth. That the construction of the said act of assembly so as to authorize an attachment for tolls to be laid in the hands of masters of vessels passing through the canal, would also make the act a violation of the constitution of the United States, by impairing the obligation of the contract between the States of Delaware, Maryland and Pennsylvania, by which the said canal is declared to be a public highway.

Fifth. That the said act of the General Assembly authorizing the attachment of the tolls of The Chesapeake and Delaware Canal Company, is unconstitutional and void, because it violates the chartered rights of the company.

The cases were argued at great length by *Clayton* and *Rogers* for plff. and *Gray* and *J. A. Bayard* for defts.   The court took time to consider of it, and at an adjourned term in October—

JOHNS, JR., *Chancellor,* delivered the following opinion of a majority of the court:

Under the issue in the preceding cases upon the facts stated and admitted, the decision of the question reserved for the consideration and judgment of this court, depends on the opinion we may have in regard to the captain's liability to the canal company for toll and the operation of the attachment.

The question relative to the captain's liability to pay toll may be considered as it exists at common law, and also as the same may be affected under the act incorporating the canal company.   According to the common law, the liabilities of the captain, appear to rest upon principles which necessarily arise out of and are essentially connected with his situation.   Hence he is styled the ship's husband, and as such, the law imposes on him the relative obligation of defraying all the contingent expenses that may accrue in the prosecution of the voyage, or may become necessary to enable the vessel to arrive at her port of destination.   He is the person authorized to pay or provide the security, and has his lien to insure reimbursement, as well as his legal remedy, to recover back all necessary disbursements.   If without the means of payment, he can hypothecate the vessel; but the liability of the vessel results from his agency, and through his instrumentality he alone represents the personal liability, and hence the law imposes on him the obligation of defraying such customary or legal pecuniary requisitions as are incurred in the progress of the voyage, and for the payment of which it would be productive of great inconvenience to trade, if the party abroad, furnishing the necessaries or repairs, had to seek for the different persons who might be owners of the vessel or interested in the cargo.   Hence the rule of law establishing the captain's liability in relation to matters essential to the prosecution of the voyage, has been long settled and is not now to be questioned. *Abbot* 133, 156, 150, *note;* 1 *Peters' Adm.* 223, 227; *Cow.* 636, 639; *Hen. Bl.* 116.   It is also conceded, that for expenses at a foreign port, such as customary toll, &c., the captain is liable; and such is the law as established by decisions.   But

it has been contended, that the present cases, being claims for canal tolls, are not embraced within the rule of the common law, and are in principle distinct.    That which constitutes the captain's liability we apprehend to be—first, the necessity of the expenditure, and secondly, that the same is made in the prosecution of the voyage and on account of the vessel or cargo.    Apply this rule to the case under consideration.    The voyage is to be performed from Philadelphia to Baltimore, passing through the Chesapeake and Delaware Canal.    By the charter, the tolls can only be received or collected at some place in the line of the canal, and in case of neglect or refusal to pay, when the vessel offers to enter, the collector is authorized to refuse admittance; if not paid on entering, and the vessel passes without payment, then the vessel is liable to seizure and sale.    Can a stronger case of necessity for payment exist, when the law authorizes the refusal of entrance on neglect or refusal to pay, and also the seizure and sale of the vessel, which not only endangers the prosecution of the voyage, but entirely destroys it; and does not the captain by payment comply with the obligation legally imposed, and in doing so, act as well on account of the vessel as her cargo?    But admitting the captain's liability, to the extent of all expenses incident to the vessel, it is contended that it cannot be enlarged so as to include charges, which are imposed on the cargo; and a distinction is made between repairs and necessaries for the ship and tolls laid upon the goods. Thus in the cases submitted, it is alledged, the act of incorporation establishing the amount of toll, charges the same upon the articles of freight, and not upon the vessel.    This has been much relied on as exonerating the captain from liability, and transferring it to the merchants or owners of the goods.    This objection we will consider, admitting for the purpose of allowing to it full weight, that the goods are liable to pay toll, the captain, we apprehend, would be bound to discharge whatever might be legally demanded during the prosecution of the voyage and even at its termination.    That he would be thus liable, appears to follow as a necessary consequence from his being in possession of the goods, and more especially, when by the terms of his contract with the owners, in signing the bill of lading, he undertakes to deliver the goods at their place of destination to the consignee.    That the goods are liable for toll under the charter, is evidently a misapprehension of the statutory provision; they are not in the act of incorporation declared to be liable to the payment of toll, so as to authorize the collector under any circumstances to resort to them for the purpose of collecting the toll imposed.    If the toll be not paid, the collector cannot seize the goods, this remedy is by the act expressly restricted to the vessel, and it alone is liable to seizure and sale.    The law authorizes the collector to demand and receive tolls, and refers to certain enumerated articles for the purpose of fixing the rate of toll, not intending thereby to render the articles specifically liable to the payment of the toll, but evidently to ascertain and regulate the amount the collector may collect or receive, either from the person or vessel passing through the canal.    If then the goods are not liable, and the collector have the right to refuse admittance to the vessel on non-payment, or after passage to seize and sell the vessel, then clearly, the case of necessity

is made out in which, according to the principles already stated, the captain becomes liable and must pay for the purpose of prosecuting his voyage, and also of protecting his vessel.   We have considered the general principles which are involved in the question to be decided, in reference to the captain's liability at common law independent of the charter, and before we advert to the act of incorporation, we will refer to a decision which fully sustains the opinion expressed, in regard to the common law liability.   The case may be found in *Molloy, p.* 231, and in 3 *Lev. p.* 37: It is, The mayor and commonalty of London against Hunt, in the Exchequer Chamber; error of a judgment in B. R. in assumpsit brought by the mayor and commonalty against Hunt, wherein they declared of a custom, that they and their predecessors, mayors, &c., have had of every master of a ship eight pence per ton for every ton of cheese, brought from any part of England to the port of London ab oriente de London Bridge, in the name of weighage, and the deft. being master of a ship had brought to the port of London so many ton, which at the rate aforesaid, came to so much, and had not paid it; and upon non-assumpsit, verdict and judgment for the plaintiff.   Upon which Hunt the deft. brought a writ of error, and two errors were assigned; first, that the action lies not against the master, for the duty is due from the merchants, owners of the goods; secondly, that there is no consideration here for the duty; for this is only in the nature of a toll thorough, which is not due without consideration (22 *Ass.* 58) and the river is a common highway.   But the judgment was affirmed; for First, the master is intrusted with the goods; he hath recompense from the merchants for the portage; he is responsible for them and shall be charged for the duty; and indeed it would be infinite to search out the owners of the several goods; besides, the goods are in the custody of the master; he brought them into port, and therefore shall be charged.   Secondly, the consideration is sufficient, he had the liberty of bringing them into port, which is a place of safety, and therefore implies a consideration in itself, and *Cotton's Rec.* 678, the mayor and commonalty of London have the view and correction of the river of Thames by *Stat. E.* 4, and *Hill.* 33, 34.   The judgment was affirmed.

The next question to be considered, relates to the effect and operation of the clause in the charter, granting to the canal company a summary remedy.   It has been insisted on in the argument of the case, that this is exclusive and precludes the company from any remedy against the captain, in case of non-payment; until by seizure and sale of the vessel, they fail to obtain the amount of the toll.   It may be well, before examining the latter part of the proposition, to inquire whether the grant of a summary power, to enforce payment of tolls, excludes the common law remedy.   The act of incorporation authorizes the company to sue and be sued, by their corporate name, and consequently, they are thereby qualified to avail themselves as suitors of every legal remedy, which may be necessary to protect their interests or enforce their rights.   Hence we would infer, that an omission to adopt the summary mode of collecting the toll, cannot deprive them of the general power of enforcing payment by action.   Such a limited construction of the act would be contrary

to the rule adopted in analagous cases, in which the statutory remedy, being summary, is considered accumulative, as in the law authorizing distress for rent, and seizure and sale for tax, in all which and analagous cases, the remedy by suit is not taken away, but still subsists, and may at the election of the party interested, be adopted. But it may be said in answer to this general rule, that the grant of summary power does not exclude the common law remedy: admitting this to be so, yet the act of incorporation declaring that, "the person having the direction of such vessel, shall be liable for such toll, if the same is not paid by the sale of such vessel as aforesaid, does postpone the captain's liability, and consequently the remedy against him, until the company shall have seized the vessel, thus rendering it imperative upon the company to resort to the vessel as primarily liable, and therefore on failure to seize and sell the vessel, depriving them of any other remedy in all cases where the vessel passes without paying the toll. If this be the true construction of the act then, instead of being as no doubt it was intended, the means of protecting the interests of the company and enlarging their powers in collecting toll, the contrary effect would be produced; because, if the act suspends the common law remedy and ultimately destroys it as against the captain, unless and until the company have seized and sold the vessel, and this they cannot do until the vessel shall have passed the canal; then the remedy is not certain but contingent, and should the seizure of the vessel be prevented by any occurrence, the company are without remedy. This right of seizure, notwithstanding the act says, "wherever found," must necessarily be limited in its exercise and confined within the jurisdiction of the states; granting this power, it cannot be exercised beyond the territory over which the right of legislation exists. Considering as we do that the act grants accumulative remedies, and is designed to enlarge the power of the canal company in collecting their tolls, which a proper consideration of it will, we think, fully and unequivocally establish, we would here remark, that the clause "the person having the direction of such vessel shall be liable for such toll if the same is not paid by the sale of such vessel as aforesaid," was probably inserted for the purpose of removing all doubt as to the continuance of the captain's liability, in cases where the party electing to pursue the summary remedy, by seizure of the vessel, failed to obtain payment, and such a construction is in furtherance of the right and in affirmance of the common law.

Having thus considered the question as to the liability of the captain at common law, and whether the grant of summary power to collect toll, either suspends or annuls the remedy by suit, we shall now inquire what is the true construction of the charter upon this subject. By the charter, the corporation are authorized and required to collect and receive the tolls, at a place in the line of the canal. The words are "it *shall* and *may* be lawful for the said president and directors, after the said canal shall be made navigable, to *demand* and *receive* the following tolls, at such place or places *in the canal*, as they may hereafter direct." The act of incorporrtion thus restricting and confining the action of the board relative to the place of demanding and receiving toll to the canal, it neces-

sarily follows that they cannot legally demand or receive payment in any place out of the prescribed limits. The act, after limiting the power of the company, both as to the demand and receipt of toll to the canal, further provides, that in case of *refusal* or *neglect to pay* the toll at the *time* of offering to pass through the said canal, and previous to the vessel passing through the same, the collectors of the said tolls may lawfully refuse passage to such vessel. This clause evidently contemplates a voluntary and not a payment by coercion; it regards the rights of the parties as independent, and authorizes the collector to refuse the right of passage if the toll remains unpaid, either by refusal or neglect. These expressions can only be applicable to some person, they cannot be applied either to the vessel or goods, for it would be absurd; they are necessarily passive, and cannot either refuse or neglect; it is true the vessel may, after passage, become liable, but the goods under no circumstances are so; the terms used, must therefore, upon a fair and reasonable construction, refer to the person competent to refuse and who may neglect; and clearly this is the proper reference when we advert to the immediate consequence thereof, being the refusal of passage, which operates directly upon the captain, and deprives him of the right to use the canal as a public highway. Besides, if this be not the meaning of the act, then by fixing the place of payment in the canal, and requiring payment at the time of offering to pass, unless the obligation to pay rests upon the captain, none being imposed upon the vessel primarily, it would appear wrong, as the canal is. declared a public highway, to deprive him of the right of passage when he is incapable of being guilty either of neglect or refusal. But he is the person really and substantially interested in the right of passage, and the liability to pay rests with him, as the carrier and possessor of the goods, and it does appear impossible to transfer the same to the owners of the goods, so as to make them answerable to the canal company for the tolls. It may be shown that the master signs all the bills of landing by which he undertakes to deliver the goods at their destined port. If goods be shipped at Philadelphia to be delivered at Baltimore, via the canal, the tolls form a part of the freight and increase its price; and the payment of the tolls being an expense, necessarily incident to the voyage, and as the captain cannot complete the voyage without paying them, it seems impossible to say, unless you suffer him to violate his contract, that he is not bound to pay them, nor without it could he earn his freight.

After the clause operating at the time the vessel offers to pass and is passing, follows the provision relative to the rights of the company and their remedy, after the vessel shall have passed without paying toll. The words of the act are as follows: "and if any vessel shall pass without paying the said toll, then the said collectors *may* seize such vessel wherever found, and sell the same at auction for ready money, which so far as is necessary shall be applied towards paying said toll, and all expenses of seizure and sale, and the balance if any shall be paid to the owner, and the person having the direction of such vessel shall be liable for such toll if the same is *not paid* by the sale of such vessel as aforesaid."

The above clause has been insisted on as exempting the captain

from liability, until after the company have seized and sold the vessel, hence, making the liability of the captian conditional and secondary, and not original or primary. This construction of the clause will require the word *may* to be erased, for it evidently confers the power to do or not to do the act authorized, and implies the right of election. Hence, as the legislature have said, the company *may* seize and sell the vessel, we infer, if they refrain from collecting the toll by seizure and sale of vessel, the right and remedy against the captain remains perfect and unimpaired. Had the intention been to make the captain liable for any deficiency, the phraseology should have been different; the language adopted is such as to imply, that in case of sale the value of the vessel would exceed the amount of toll and expenses, since it is provided that the balance, if any, shall be paid to the owner, and the liability of the person having direction is not declared to be such, as to make him responsible for any deficiency, but without reference to the amount received from the sale, and upon the *non payment* of toll·by sale, he is liable: the intention manifestly being, to continue the pre-existing liability of the captain, unles payment is obtained, by the seizure and sale of the vessel, and to preclude him from any defence against the claim of the company, unless he can show payment.

The construction we have given that part of the act of incorporation relative to toll, as connected with the captain's liability, appears to us, in accordance with the common law principles, and altoget' ·r consistent with, and we may add, essential to the preservation of the rights of the canal company. It fully recognizes the common law obligation of the captain, and retains to the company their several remedies, as separate, distinct and accumulative, thereby affording the means of enforcing payment of toll, either by suit or by the summary mode of proceeding *in rem* as prescribed by the charter. That the legislature should thus grant the summary power, and not design thereby to impair any common law remedy or liability, is further evident from the circumstance of the canal being declared a public highway, which had it not been controlled by vesting in the company authority to demand and receive toll prior to the exercise of the right of passage, would have occasioned much loss and difficulty in obtaining payment.

If the construction we have given the charter be correct, then the case stated, admitting no payment of toll at the time of entering or whilst passing, nor by the sale of the vessel, it necessarily follows the captain is liable, and to the amount of the sum due for tolls, is indebted to the canal company; and hence under the attachment law dated March 24, 1770, sec. 18 (See *Dig. Del. Laws* 51) the plff. in the attachment would be entitled to judgment.

Having thus considered the captain's liability to pay toll as primary and not dependent on the seizure and sale of the vessel; and also the judgment creditor's right to attach tolls due and unpaid when payment thereof has not been made in manner and place as prescribed by the charter, we will now advert to that part of the case which the argument and not the case stated has presented under the act of 1829, entitled "An act for expediting suits against corporations." *Sec. 4. Dig. Del. Laws* 98.

It has been insisted on that tolls are not liable to attachment. With respect to tolls due and unpaid, our opinion has been declared, that they are subject under the act of 1770. And by the act of 1829, authorizing the judgment creditor after sixty days to attach the tolls due or to become due of said company, it may be said the legislative provision is express and ita lex scripta est. But it has been objected that this act of 1829, is unconstitutional, inasmuch as it violates the clause in the tenth section of the first art. of the constitution of the United States which declares that "no State shall pass any bill of attainder, ex post facto law, *or law impairing the obligation of contracts.*" Is it ex post facto, that phrase in the constitution of the U. States is only applicable to such laws as relate retrospectively to crimes, pains and penalties, *Colder* vs. *Bull, in Sup. C. U. States,* 3 *Dall.* 386. Is it then a law impairing the *obligation* of contracts? It has been alledged that it is by affecting the chartered rights of the company; which, it has been contended, being a grant from the legislature, is a contract; if then it is a violation of the charter of the canal company, it must be by repealing some part thereof, either expressly or by implication: there is no repeal by express terms, nor can any be inferred: the powers and rights of the company under the charter are the same now as prior to the act of 1829; and as to their contracts, certainly they cannot be impaired by a law purely remedial, and designed to enforce the performance of contracts entered into by the company under their charter. Besides, the act of 1829 does not enlarge the obligations of the company, nor affect property or rights which by legislative grant were exempt, but rather the reverse, for if we advert to the original act incorporating The Chesapeake and Delaware Canal Company, it will appear the tolls are declared liable. In the case of *Stoddard* vs. *Smith,* 5 *Binn. page* 358, Duponceau in argument remarked, "the remedy is no part of the contract. Every legislature must add, alter or take away remedies to suit the public convenience." *Tilghman C. J.* in delivering his opinion, page 364, remarks: It is said, by this law, the obligation of the contract is impaired. If the law took effect before the contract, the objection vanishes. At present we are not satisfied on this point, nor are we satisfied that even if the contract preceded the law, its obligation is impaired by it. Every thing stands precisely as agreed on, but in case of default a *summary remedy* is given.

*Yates, J.* "The obligation of the contract on either side was wholly unimpaired, each stood bound to perform their stipulated engagements. What change then did the law profess to introduce? None whatever, but the simple one of *accelerating the remedy.* Private rights are preserved, but a remedy for a wrong is to be administered. In this I cannot see any violation of the constitution."

In like manner in the case under consideration, it may be asked, have the legislature done more than to extend the remedy? We apprehend they have not, and that unless it be unconstitutional to enforce by legislative enactments the payment of debts, the law of 1829, cannot be considered a violation of the constitution of the United States. Independent of the act authorizing the creditor to attach the tolls due or to become due, payment at the time of offering to enter the canal, might have been considered a purchase of the

right of passage, and being made prior to the engagement of the right, no indebtedness would have existed, and hence the attachment would not have been available with respect to the tolls accruing.

In the cases submitted, no question of this kind is presented, as it is admitted, the tolls were not paid at the time of offering to enter, or prior to the attachment being laid in the hands of the captains, in manner as prescribed by the charter. But, supposing the captains, after service of the attachment, and before entering the canal, had, at the time of offering to enter, paid the tolls, it would not have been available, because, the supplemental act, authorizing the attachment of the tolls, was intended to operate, upon the thing described and designated as toll before payment, and even before the same became due, the words of the act being *"tolls due and to become due"*. It is therefore essential, if the supplemental act is to have effect to give it such a construction as will attach the sum to be paid at the time, when the liability to pay the same arises and the party to whom the payment is to be made, has the legal right to make the demand. The charter has fixed the time and place, and hence, we consider, that whenever the creditor, at the time the liability to pay toll arises, interposes the writ of attachment, he thereby legally suspends the right to pay or receive and has a right to the same according to the principles of the attachment law. It has been in the argument insisted, that such a construction imposes much hardship and inconvenience on those engaged in trade; the answer to this is, that the inconvenience is not properly chargeable upon the creditor seeking to enforce payment, but upon the debtor whose default and omission to pay his debts occasions all the difficulty and inconvenience.

Judgment for plaintiff.

*Clayton* and *Rogers,* for plaintiff.
*Gray* and *J. A. Bayard,* for defendants.