**[J-20-2015] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 26 WAP 2014 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court, entered November 25, 2013 at |
| | : | No. 45 WDA 2011, vacating the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Allegheny County, |
| | : | entered December 7, 2010, at No. CP- |
| STEVENSON LEON ROSE, | : | 02-CR-0000810-2008 and remanding. |
| | : | |
| Appellee | : | ARGUED:  April 8, 2015 |

## DISSENTING OPINION

**MR. JUSTICE STEVENS**                **DECIDED: NOVEMBER 18, 2015**

In this case Appellee was convicted in 1994 of attempted murder and aggravated assault, but his victim did not die until 2007, and he should not escape appropriate punishment because the victim miraculously survived for a period of thirteen years.

The Majority holds that where an amendment to a sentencing statute provides a more severe sentence for a crime, the date upon which one engaged in and completed the criminal acts underlying his or her conviction determines whether the amendment applies, even when the crime is third-degree murder and the victim is still alive prior to the effective date of the amendment.  I respectfully dissent.

The Majority refers to Appellee's attack upon the victim on July 13, 1993, as a "deadly assault" and reasons that any resultant sentence beyond the maximum allowable sentence at that time for third-degree murder under 18 Pa.C.S. § 1102(d) would subject him to an "enhanced penalty" and constitute an *ex post facto* punishment.

Respectfully, I disagree, for it is well-established that a victim's death is an essential element of criminal homicide;[1] therefore, Appellee did not commit third-degree murder until 2007.[2] It follows that, as it pertains to him, the sentencing enhancement at 18 Pa.C.S. § 1102(d) does not constitute *ex post facto* legislation, for it was impossible for Appellee to have been sentenced prior to his conviction of third-degree murder at which time that statute prescribed a 20 to 40 year sentence for the crime.[3]

On March 16, 1994, a jury convicted Appellee of, *inter alia*, attempted murder and aggravated assault for the brutal beating of the victim. Appellee was neither charged with third-degree murder in 1993 nor convicted of that crime in 1994 because, contrary to the Majority's characterization, his violent assault had not been a deadly one, for his victim survived. Notwithstanding, the Majority has determined that the date

---

[1] See 18 Pa.C.S. § 2501(a) (indicating criminal homicide occurs when a person "intentionally, knowingly, recklessly or negligently causes the death of another human being."); See also, Commonwealth v. Ramunno, 219 Pa. 204, 208, 68 A. 184, 185 (1907) ("Murder is committed only when the victim of the assault dies"). In addition, the United States Supreme Court has held that any fact that was by law essential to the penalty is an element of an offense which a jury must find beyond a reasonable doubt. Alleyne v. United States, ___ U.S. ____, ____, 133 S.Ct. 2151, 2159 (2013).

[2] 18 Pa.C.S. § 2502(c) states: "**Murder of the third degree.--** All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree."

[3] I further disagree with the Majority's statement the Commonwealth does not controvert that sentencing Appellee under 18 Pa.C.S. § 1102(d) "disadvantages" him by subjecting him to a greater sentence than that he would have received pursuant to 18 Pa.C.S. § 1103(1). Indeed, the entire premise of the Commonwealth's argument is that Appellee could not have been sentenced pursuant to 18 Pa.C.S. § 1103(1) because he had neither committed nor been convicted of third-degree murder when that sentencing statute was effective; thus, his sentence under 18 Pa.C.S. § 1102(d) did not constitute a retroactive application of a sentencing statute.

upon which all of the elements of criminal homicide are met is not dispositive for purposes of evaluating whether a defendant's sentence violates the Ex Post Facto Clause of the United States Constitution. In doing so, it stresses that as Appellee's criminal acts occurred prior to the increase in the statutory sentencing scheme in 1995, the Ex Post Facto Clause is implicated because he had no way to anticipate he could be sentenced to 20 to 40 years in prison upon his conviction of third-degree murder. In support of its holding the Majority deems the facts of State v. Detter, 260 S.E.2d 567 (N.C. 1979) to be analogous to those herein.

In Detter, a death penalty case, the North Carolina Supreme Court framed the dispositive question as whether a defendant commits first-degree murder when she intentionally inflicts murderous acts or at the time of the resultant death of the victim. In holding that one commits an intentional murder at the time she performs the murderous acts, the court distinguished its decision from that it had reached in State v. Williams, 49 S.E.2d 617 (N.C. 1948). Therein, the court had found that an individual who assisted another after the latter had inflicted upon the victim what would later prove to be a fatal blow could not be convicted as an accessory after the fact to murder because the murder was not complete until the resulting death and no such charge could have been brought prior to that time. Detter, 260 S.E.2d at 590 (citing Williams, supra).

Herein, unlike the defendant in Detter, who clearly contemplated killing her husband in the months prior to his death when the maximum penalty for first-degree murder was life imprisonment, Appellee's attempted murderous and assaultive acts did not expose him to any penalty for third-degree murder until that charge could have been brought against him in 2007. In Detter, the defendant engaged in what the court termed

"murderous acts" at a time when a death sentence was not a foreseeable punishment and, thus, arguably was disadvantaged and subjected to an enhanced penalty when the death penalty was reinstated just days before her victim passed away.

Here, Appellee never has been deemed to have engaged in intentionally murderous behavior on July 13, 1993.[4]   Because his ultimate conviction of third-degree murder did not require a specific intent, his awareness of the possible punishment he could face if his victim died as a result of his actions would have had no deterrent effect.

I further believe it is not possible for a court engaging in an *ex post facto* inquiry involving criminal homicide to assign one date to the time at which the criminal acts were committed and a separate one to the time at which he could be charged with an offense, *i.e.*, following the death of the victim.   In this regard, I find Superior Court President Judge Susan Peikes Gantman's analysis set forth in her dissent to be convincing: [5]

> Here, Appellant did not 'commit' the murder until the victim died on September 17, 2007.  **See Ramunno, supra**.  Although the attack happened years before, there was no murder until the final element of the offense, the victim's death, actually occurred.  In my opinion, the court did not 'retroactively apply' Section 1102(d); rather, the court utilized the sentencing statute in effect at the time of the murder.  Therefore, the court's sentence was proper because Section 1102(d) went into effect in 1995, before the murder occurred.  **See Calder v. Bull**, 3 U.S. 386, 390, 1 L.Ed. 648, ____ (1798) (defining *ex post facto* law as "law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed").

---

[4] To the contrary, at his first trial Appellee denied stabbing the victim, although he admitted he kicked and stomped on her, and he claimed his actions were the result of his excessive drinking and drug use on the night of the attack.  At his criminal homicide trial, Appellee asserted a diminished capacity defense based on his high level of intoxication that evening.

[5] Judge Cheryl Allen joined in this dissent.

Commonwealth v. Rose, 81 A.3d 123, 137 (Pa. Super. 2013) (*en banc*) (Gantman, J., dissenting). Indeed, it is absurd to think that Appellee could have been charged with criminal homicide in 1993 or convicted of third-degree murder in 1994, in that his victim miraculously survived his attack for over a decade thereafter.

Simply put, Appellee was not disadvantaged by the changes to the sentencing scheme for third-degree murder which became effective in 1995 because he could not have been subjected to prosecution and punishment on a criminal homicide charge until the victim's death. Stated another way, Appellee's punishment pursuant to 18 Pa.C.S. § 1102(d) was not made more burdensome or retroactive since he could not have been charged with or convicted of third-degree murder prior to 2007.